IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Melinda K. Corporan, heir at law of**
**Reat Underwood, and Administratrix**
**and personal representative of the Estate of**
**Reat Underwood,**

        **Plaintiff,**

v.                                                                                                                             Case No. 16-2305-JWL

**Wal-Mart Stores East, LP and**
**Wal-Mart Stores, Inc.,**

        **Defendants.**

## MEMORANDUM & ORDER

Plaintiff Melinda K. Corporon is the mother of Reat Underwood, who was shot and killed by Frazier Glenn Cross, Jr., a/k/a Frazier Glenn Miller ("Miller"). Plaintiff is also the Administratrix of the Estate of Reat Underwood. The shotgun utilized by Miller to kill Dr. Corporan was sold by defendants to John Mark Reidle, who transferred the gun to Miller after he purchased it. Plaintiff filed a state court petition against defendants alleging that defendants negligently sold the shotgun to Reidle, a straw purchaser, with knowledge that Reidle was falsely representing himself as the actual buyer of the firearm. Defendants thereafter removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. This matter is presently before the court on defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim (doc. 10). As will be explained, the motion is granted in part and denied in part and plaintiff shall file an amended complaint no later than Friday, July 29, 2016.

**Standard**

In analyzing defendants' Rule 12(b)(6) motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007))). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lebahn v. National Farmers Union Uniform Pension Plan*, ___ F.3d ___, 2016 WL 3670007, at *2 (10th Cir. July 11, 2016) (quoting *Iqbal*, 556 U.S. at 678). It is not enough for the plaintiff to plead "labels and conclusions" or to provide "a formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).

**Background**

Consistent with the applicable standard, the following facts are taken from the complaint and accepted as true for purposes of this motion.[1] On April 9, 2014, Miller and Reidle entered a Wal-Mart Supercenter in Republic, Missouri. Miller is a convicted felon who is prohibited by law from purchasing firearms. In the presence of at least one Wal-Mart salesperson, Miller selected a Remington shotgun and initiated its purchase. Miller then claimed that he did not

---

[1] As noted earlier, plaintiff initially filed her claims in a state court petition. Nonetheless, the court uses the term "complaint" as defendants have removed the case to federal court and the federal rules and relevant case law use the term "complaint" rather than "petition."

have any identification with him and "offered that Reidle would complete the purchase." Reidle, in the presence of Miller and at least one Wal-Mart employee, completed the requisite Form 4473 in which he falsely identified himself as the actual buyer of the firearm.[2] According to plaintiffs, defendants assisted Reidle in completing Form 4473 and then sold the firearm to Reidle, who thereafter transferred it to Miller. On April 13, 2014, Miller used the Remington shotgun to shoot and kill Reat Underwood and his grandfather in the parking lot of the Jewish Community Center in Overland Park, Kansas. Based on these facts, plaintiff has sued defendants for negligence, negligent entrustment, negligence per se and aiding and abetting a straw purchase of a firearm.

**PLCAA Immunity**

Defendants move to dismiss the entirety of plaintiff's complaint based on the immunity provided by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 et seq. ("PLCAA"). The PLCAA was enacted in 2005 and generally prohibits claims against firearms and ammunition manufacturers, distributors, dealers, and importers for damages and injunctive relief arising from the criminal or unlawful misuse of firearms and ammunition, unless the suit falls within one of six enumerated exceptions. 15 U.S.C. §§ 7901–7903. The PLCAA requires

---

[2] The Bureau of Alcohol, Tobacco, Firearms, and Explosives requires that buyers complete Form 4473 accurately and truthfully before purchasing a firearm from a federal firearms licensee. *United States v. Reed*, 599 Fed. Appx. 827, 829 n.3 (10th Cir. 2014). Among other things, Form 4473 seeks to prevent straw purchases of firearms and, toward that end, requires a prospective purchaser to certify that he is the actual buyer and that he is not acquiring the firearm on behalf of another person. *United States v. Reese*, 745 F.3d 1075, 1078 (10th Cir. 2014). Form 4473 also requires the dealer to certify that the dealer believes, based on the information disclosed in the form, that it is not unlawful for the dealer to transfer the firearm to the prospective purchaser. *See Shawano Gun & Loan, LLC v. Hughes*, 650 F.2d 1070, 1073 (7th Cir. 2011).

that federal courts "immediately dismiss[ ]" a "qualified civil liability action." 15 U.S.C. § 7902(b).

> The term "qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include [specified enumerated exceptions.]

*Id*. § 7903(5)(A). The parties do not dispute that this case meets all the elements of that general definition as applied to defendants—it is a "civil action" brought by a "person" for damages and other relief to redress harm "resulting from the criminal . . . misuse of a qualified product by . . . a third party." *Id*. Additionally, defendants are "seller[s] of a qualified product," *id.*, because they distributed the firearm used in the shooting, *see id*. § 7903(6) (defining "seller").

The PLCAA therefore requires dismissal of plaintiff's complaint if none of the specified exceptions applies. *See Ileto v. Glock, Inc*., 565 F.3d 1126, 1132 (9th Cir. 2009). Stated another way, plaintiff's state law negligence claims must fall into one the exceptions enumerated in the PLCAA before plaintiff will be permitted to proceed with her claims. Plaintiffs argue that the third exception, § 7903(5)(A)(iii), applies. Under that exception, the PLCAA does not preempt

> an action in which a manufacturer or seller of a qualified product *knowingly violated a State or Federal statute applicable to the sale or marketing of the product*, and the violation was a proximate cause of the harm for which relief is sought, including—
>
> (I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

4

> (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18[.]

*Id*. § 7903(5)(A)(iii) (emphasis added).  This exception has come to be known as the "predicate exception," because a plaintiff not only must present a cognizable claim, he or she also must allege a knowing violation of a "predicate statute."  *Ileto v. Glock, Inc*., 565 F.3d 1126, 1132 (9th Cir. 2009) (citing cases).  That is, a plaintiff must allege a knowing violation of "a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii).  In her complaint, plaintiff alleges that defendants knowingly violated certain specific provisions of the Gun Control Act of 1968, 18 U.S.C. §§ 921-931:  making a false statement "material to the lawfulness of the sale" in violation of § 922(a)(6); making a false statement "with respect to information required by [the Act] to be kept" by the dealer in violation of § 924(a)(1)(A); making a false entry in or failing to make an appropriate entry in any record which the dealer is required to keep under the Act in violation of § 922(m); and selling or disposing of a firearm to a person who he knows or has reasonable cause to believe has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year in violation of § 922(d)(1).[3]

      The allegations in the complaint do not plausibly support a claim that defendants violated § 922(d)(1).  There are no allegations in the complaint that defendant knew or should have known that Miller was a convicted felon and plaintiff does not suggest otherwise in her submissions.  The remaining statutes identified by plaintiff, as they relate to this case, involve

---

[3] While plaintiff generally alleges in her petition that defendants also violated "various . . . state laws," she does not identify in her petition or in her submissions any specific state statutes allegedly violated by defendants.

defendants' role in completing and maintaining Form 4473. The Bureau of Alcohol, Tobacco, Firearms, and Explosives requires that buyers complete Form 4473 accurately and truthfully before purchasing a firearm from a federal firearms licensee. *United States v. Reed*, 599 Fed. Appx. 827, 829 n.3 (10th Cir. 2014). Federal firearms licensees must maintain these records. *Id*. Among other things, Form 4473 seeks to prevent straw purchases of firearms and, toward that end, requires a prospective purchaser to certify that he is the actual buyer and that he is not acquiring the firearm on behalf of another person. *United States v. Reese*, 745 F.3d 1075, 1078 (10th Cir. 2014). Form 4473 also requires the dealer to certify that the dealer believes, based on the information disclosed in the form, that it is not unlawful for the dealer to transfer the firearm to the prospective purchaser. *See Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1073 (7th Cir. 2011). A dealer violates the Gun Control Act—and the specific provisions highlighted by plaintiff—if the dealer transfers a firearm based upon information in Form 4473 that he knows or has reason to believe is false. *Id*. (citing 18 U.S.C. §§ 922(m) and 924(a)(1)(A)).

Defendants highlight in their submissions that the complaint is devoid of any allegations that defendants made any false entries or false statements in connection with the Form 4473—only that Reidle did so. This is an accurate characterization of the complaint. As noted above, however, Form 4473 requires the dealer to certify in writing that the dealer believes, based on the information disclosed in the form, that it is not unlawful for the dealer to transfer the firearm to the prospective purchaser. The blank Form 4473 submitted by plaintiff confirms that the seller's signature and certification is required. Assuming, then, that plaintiff could amend her complaint to include the allegation that Form 4473 was signed by a salesperson with knowledge of the transaction (an allegation that plaintiff makes in her submissions), then plaintiff will have

alleged sufficient facts, together with other facts alleged in the complaint, to support a plausible claim that defendants certified to their belief that the sale was lawful when, in fact, they had knowledge that Reidle was not the actual buyer of the firearm.  Those other allegations include the fact that Miller, in the presence of a Wal-Mart salesperson, selected the firearm and initiated the purchase of the firearm, but offered up Reidle to complete the purchase after claiming that he did not have identification with him.  The court, then, will permit plaintiff an opportunity to amend her complaint to include allegations concerning the certification provided by defendants on Form 4473.

Assuming that plaintiff amends her complaint as described here, her claims are sufficient to survive the PLCAA filter.  *See Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 787 (N.Y. Sup. Ct. 2014) (denying in large part defendant's motion to dismiss based on PLCAA immunity where plaintiffs alleged that straw purchaser and actual buyer visited store together but straw purchaser made no inquiries about guns and paid with cash provided by actual buyer); *see also Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070 (7th Cir. 2011) (affirming district court's decision that defendant had reason to believe that purchaser was not actual buyer of firearm where purchaser had the same last name and/or address as a person whose application to purchase the firearms was denied either that day or the previous day).

The cases relied upon by defendants in their motion do not persuade the court otherwise.  In *Ileto*, the Ninth Circuit held that the plaintiffs had not alleged the violation of any separate federal or state statute and, accordingly, could not satisfy the requirements of the predicate exception of the PLCAA in connection with their claims against a gun manufacturer.  565 F.3d at 1133.  Here, of course, plaintiffs have alleged violations of the federal Gun Control Act.  In

7

*Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015), the district court also held that the plaintiffs, who sued a firearm dealer, could not satisfy the predicate exception because the purchaser of the firearm admittedly had "no human contact" with the dealer and all sales were made online. *Id*. at 1224. The dealer, then, had no reason to know, as alleged by plaintiffs, that the purchaser was addicted to a controlled substance or was patently dangerous. By contrast, plaintiffs here allege that defendants had direct contact with Reidle and Miller and, based on the circumstances, knew that Reidle was not the actual buyer of the firearm. In the third case cited by defendants, *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013), a teenager was killed in a random shooting by an AK-47 assault rifle and her estate sued the manufacturer of the gun for negligence. The district court sua sponte dismissed the case under the PLCAA on the grounds that the PLCAA barred suits against gun manufacturers for injuries caused by the private, criminal use of their guns and that no exception plausibly applied to the facts alleged. *Id*. at 45-46. *Jefferies*, then, is readily distinguishable from the case presented here. Finally, in the last case cited by defendants, *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013), the court held that the plaintiff could not establish a "knowing violation" of a federal or state statute if the evidence undisputedly showed that the firearm was stolen from the dealer. *Id*. at 394. The court, however, recognized that if a factual dispute existed as to whether the dealer sold the rifle or otherwise transferred the rifle, then summary judgment was not appropriate. *See id*.

For the foregoing reasons, the court concludes that plaintiff's complaint, with the anticipated amendments described herein, sufficiently alleges conduct that falls within the

predicate exception to PLCAA. Defendants, then, have not shown that dismissal of the complaint under the PLCAA is appropriate.[4]

*Negligence Per se*

Defendants also move to dismiss plaintiff's negligence per se theory on the grounds that plaintiff has failed to allege facts sufficient to establish the violation of a statute. The court has already rejected this argument in connection with the PLCAA discussion above and does so again here. Defendants next contend that plaintiff's negligence per se theory would still fail under both Missouri and Kansas law. Under Missouri law, a plaintiff asserting negligence per se must plead that the defendant violated a specific statute or regulation and that the injury complained of was the kind the statute or regulation was designed to prevent. *See Parr v. Breeden*, ___ S.W.3d ___, 2016 WL 3180249, at *4 (Mo. June 7, 2016). Plaintiff has specifically pleaded that the federal Gun Control Act was intended to protect the public from

---

[4] In their motion to dismiss, defendants attack plaintiff's complaint in piecemeal fashion, arguing that plaintiff must show that each "claim" set forth in her complaint satisfies one of the enumerated exceptions. Plaintiff contends that if her allegations satisfy one exception, she need not separately establish, for example, that her negligent entrustment theory or her negligence per se theory also fit within one of the exceptions. Defendants do not reply to plaintiff's position. Thus, because the court finds the predicate exception applicable to this action, it declines to engage in the claim-by-claim analysis advanced by defendants. *See Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 787 (N.Y. Sup. Ct. 2014) ("as long as one PLCAA exception applies to one claim, the entire action moves forward"); *Williams v. Beemiller, Inc.*, 952 N.Y.S.2d 333 (N.Y. App. Div. 2012) (finding one applicable PLCAA exception and permitting entire case to go forward without addressing other exceptions as to remaining claims). This approach is consistent with the language of the statute itself, which does not apply to "actions" in which a knowingly violation is alleged. *See* 15 U.S.C. § 7903(c)(5) (a "qualified civil liability action" . . . "shall not include" . . . "an action" in which a seller knowingly violated state or federal statutes).

9

violent crimes committed by felons with firearms and that Reat Underwood is a member of the class of persons meant to be protected by the Gun Control Act.

In summary fashion, defendants contend that plaintiff cannot state a claim under Missouri law because the Gun Control Act was not intended to prevent injuries to the public at large. Missouri courts have not considered whether a shooting victim such as Reat Underwood is within the class of persons intended to be protected by the federal Gun Control Act. In the only Missouri case cited by defendant, however, the Missouri Court of Appeals reversed a trial court's dismissal of a negligence per se claim where the plaintiff pleaded that a nursing home resident was intended to be protected by federal and state nursing home regulations and the legislative history indicated that the laws were intended to prevent physical and emotional abuse in nursing homes. *See Dibrill v. Normandy Assocs., Inc*., 383 S.W.3d 77, 84-85 (Mo. Ct. App. 2012). In the absence of any Missouri case law indicating that the Missouri Supreme Court would hold otherwise, the court is comfortable predicting that Missouri courts would conclude that the Gun Control Act was designed to protect the public by keeping "guns out of the hands of criminals and others who should not have them, and to assist law enforcement authorities in investigating serious crimes." *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014); *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (principal purpose of Gun Control Act is to "curb crime"); *King v. Story's, Inc*., 54 F.3d 696, 697 (11th Cir.1995) (vacating district court's award of summary judgment in favor of defendant who allegedly sold the rifle used to kill the plaintiff to a convicted felon in violation of section 922(d)(1), and confirming that "[t]he trial court [properly] recognized that this plaintiff . . . is a member of the class of persons Congress intended to protect by enacting the Gun Control Act; that the injuries were of the type

10

contemplated by the Act; and that the sale was made in violation of the Act"). Defendants, then, have not shown that dismissal of plaintiff's negligence per se theory is warranted under Missouri law.

With respect to the doctrine of negligence per se under Kansas law, defendants urge that plaintiff must establish that an individual right of action for injury arising out of the statute was intended by the legislature, as stated by the Kansas Supreme Court in *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004). Recently, however, the Kansas Supreme Court acknowledged that its rules regarding negligence per se "are difficult to reconcile and equally difficult to apply." *Shirley v. Glass*, 308 P.3d 1, 5-6 (Kan. 2013). In that case, the plaintiff filed a petition against a gun seller alleging negligence based on the seller's act of selling a firearm while knowing that the purchaser of the firearm intended to have another individual take possession of the firearm. *Id*. at 5. Both the district court and the Kansas Court of Appeals held that the plaintiff could not maintain a negligence per se claim based on a violation of the Gun Control Act because that statute did not create a private right of action. *See Shirley v. Glass*, 241 P.3d 134, 149-52 (Kan. Ct. App. 2010). In a concurring opinion, Judge Malone of the Kansas Court of Appeals acknowledged that the decision was correct under the current Kansas law, but urged the Kansas Supreme Court to revisit this "additional" requirement for recovery under the theory of negligence per se. As explained by Judge Malone, Kansas courts have not always required an individual to establish that the legislature intended to create an individual right of action arising from the violation of a statute and the test currently utilized in Kansas "appears to differ from the negligence per se doctrine recognized in every other state." *Id*. at 158-59. In great detail,

Judge Malone challenged the requirement as "difficult to apply" and one that has led to "inconsistent and curious" results.  *Id.* at 159-60.

The plaintiff in *Shirley* sought review of the appellate court's decision on negligence per se, but the Kansas Supreme Court did not address the concerns raised by Judge Malone (except to the extent it agreed that much confusion exists in Kansas concerning the doctrine of negligence per se) because it determined that plaintiff was not presenting negligence per se as a separate cause of action created by statute but that she was asserting only a claim of "simple negligence" that looked to the federal statute to define the standard of care.  *Shirley,* 308 P.3d at 5-6.  The Court, then, found it "irrelevant" as to whether the federal Gun Control Act gave rise to a private cause of action because the statutory violation was not the grounds for her claim.  *Id.* at 5.  Rather, she appropriately sought to utilize the federal statutes to establish a duty of care in her negligence claim.  *Id*. at 6.

As plaintiff highlights in her response, *Shirley* at the very least authorizes plaintiff's reliance on the federal Gun Control Act to establish the duty of care and a violation of that statute may be used by plaintiff to establish a breach of a duty.  *Id*. at 7.  To the extent, of course, that plaintiff is attempting to plead negligence per se as a separate "statutorily created private cause of action," Kansas law would preclude that approach. *Id.* at 5.  But to the extent that plaintiff references the federal statute to define the standard of care—and references a violation of that statute as evidence of breach—*Shirley* permits that approach.  *See id*. at 5-6.  Defendant's motion to dismiss, then, is granted under Kansas law to the extent plaintiff seeks to assert a separate claim based solely on a violation of the statute, but is denied to the extent that plaintiff is using the statute to establish duty and breach.

*Negligent Entrustment*

In her complaint, plaintiff asserts a claim for negligent entrustment under state law. Defendants move to dismiss this claim on the grounds that plaintiff has failed to set forth facts sufficient to plead a claim of negligent entrustment under either Kansas or Missouri law. Under the laws of both states, plaintiff, to prove this claim, must show that defendants entrusted the firearm to someone "incompetent" and that defendants had knowledge of the person's incompetence. *See Shirley v. Glass*, 308 P.3d 1, 6 (Kan. 2013); *State ex rel. Stinson v. House*, 316 S.W.3d 915, 919 & n.3 (Mo. 2010). Defendant contends that plaintiff has not sufficiently pleaded facts suggesting that Reidle was incompetent or that defendants knew that Reidle was incompetent. In her complaint, plaintiff alleges that defendants negligently entrusted the firearm to both Reidle and Miller and that Miller was incompetent. In her submissions, however, plaintiff clarifies that her negligent entrustment theory focuses on the entrustment of the firearm to Reidle who, according to plaintiff, was "incompetent" based solely on his status as a straw purchaser. Plaintiff further clarifies in her submissions that defendants, under the circumstances described, knew that Reidle was not the actual buyer of the firearm and, thus, knew of his status as a straw purchaser.

While defendants are correct that these allegations are not included in the complaint, the court concludes that plaintiff should be permitted to amend her complaint to include these allegations. Significantly, defendants in their reply brief focus only on the language of the negligent entrustment exception to the PLCAA and do not address plaintiff's argument that she

13

has otherwise stated a claim for negligent entrustment under Kansas and Missouri law. The motion to dismiss, then, is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss for failure to state a claim (doc. 10) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff shall file an amended complaint as described herein no later than **Friday, July 29, 2016**.

**IT IS SO ORDERED**.

Dated this 18th day of July, 2016, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge